**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **MIAMI VALLEY FAIR HOUSING** | : | |
| **HOUSING CENTER, INC.** | | |
| **505 Riverside Drive** | : | **Judge:** |
| **Dayton, OH 45405** | | **Case No.:** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **TSM PARTNERS, LTD.** | : | |
| **228 Byers Road, Suite 100** | | |
| **Miamisburg, OH 45342** | : | |
| | : | |
| **and** | : | |
| | : | |
| **HERITAGE HOME SERVICES, LLC** | : | |
| **7501 Paragon Road** | | |
| **Dayton, OH 45459** | : | |
| | : | |
| **and** | : | |
| | : | |
| **HOUSING REDEVELOPMENT, LTD.** | : | |
| **228 Byers Road, Suite 100** | : | |
| **Miamisburg, OH 45342** | | |
| | : | |
| **and** | : | |
| | : | |
| **LISA NEAL** | : | |
| **296 Monarch Road** | | |
| **Dayton, OH 45458** | : | |
| | : | |
| **and** | | **COMPLAINT** |
| | : | <u>**JURY TRIAL DEMANDED**</u> |
| **KHALOON MUGHRABI** | | |
| **535 N. Main Street** | : | |
| **Springboro, OH 45066** | | |
| | : | |
| **Defendants.** | | |
| | : | |

1

## COMPLAINT

Now comes Plaintiff, Miami Valley Fair Housing Center, Inc., by and through counsel, and for its Complaint states the following:

### INTRODUCTION

1. Plaintiff, Miami Valley Fair Housing Center, Inc. ("MVFHC" or "Plaintiff"), brings this action for declaratory, injunctive, and monetary relief against TSM Partners, Ltd., Heritage Home Services, LLC, Housing Redevelopment, Ltd., Lisa Neal, and Khaloon Mughrabi (collectively the "Defendants"), for discrimination on the basis of disability in violation of the federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*, and the fair housing laws of the state of Ohio, Ohio Rev. Code § 4112.01, *et seq.* (the "Fair Housing Laws").

2. Under the Fair Housing Laws, housing providers shall not discriminate because of disability, among other protected characteristics.

3. Disability discrimination occurs when a housing provider treats someone differently because they have a disability, or by denying a reasonable accommodation or reasonable modification.

4. Defendants' housing policies and practices restrict housing choice for prospective tenants utilizing assistance animals.

5. Defendants' policies and practices impose different terms and conditions on prospective tenants with assistance animals, which severely limits housing choice for applicants with disabilities.

6. Defendants' polices and practices deny reasonable modification requests by prospective tenants, which severely limits housing choice for applicants with disabilities.

7. Defendants' policies and practices make housing unavailable for prospective tenants with disabilities in violation of the Fair Housing Laws.

8. The Ohio Civil Rights Commission (the "Commission") conducted an extensive investigation into this matter and determined it was probable that Defendants engaged in an unlawful discriminatory practice in violation of Ohio Rev. Code § 4112.

9. Defendants engaged in violations of the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, and Ohio Fair Housing Act, Ohio Rev. Code § 4112.01, *et seq*., by imposing different terms and conditions on prospective applicants; and failing to grant reasonable accommodations and modifications.

10. Defendants' policies and practices violate the Fair Housing Laws, 42 U.S.C. 3601, *et seq.;* and Ohio Rev. Code §4112.02(H), *et seq*., in that they unfairly restrict housing choice for tenants with disabilities.

**PARTIES**

11. Plaintiff, Miami Valley Fair Housing Center, Inc. (MVFHC), is a private, non-profit corporation, organized under the laws of the State of Ohio. MVFHC is governed by a volunteer board of directors and has a principal place of business in Dayton, Montgomery County, Ohio. The mission of MVFHC is to eliminate housing discrimination and ensure equal housing opportunity for all people in our region, the State of Ohio, and nationally. MVFHC conducts housing discrimination testing to ensure that housing providers are meeting the requirements of all federal, state, and local fair housing laws.

12. Defendant, TSM Partners, Ltd., is an Ohio corporation. TSM Partners maintains its principal place of business in Miamisburg, Ohio. At all times herein, Defendant, TSM Partners, Ltd., owned and operated 917 Mineola Court, Trotwood, OH 45426.

13. Defendant, Heritage Home Services, LLC, is an Ohio corporation. Heritage Home Services maintains its principal place of business in Dayton, Ohio and once conducted its operations under the assumed name of Coldwell Banker Heritage. At all times herein, Defendant, Heritage Home Services, LLC, operating at the time as Coldwell Banker Heritage, was the property manager of 917 Mineola Court, Trotwood, OH 45426 and 2019 E. Bataan Drive, Dayton, OH 45420 (collectively the "Subject Properties").

14. Defendant, Housing Redevelopment, Ltd., is an Ohio corporation. Housing Redevelopment, Ltd., maintains its principal place of business in Miamisburg, Ohio. At all times herein, Defendant, Housing Redevelopment, Ltd., owned and operated 2019 E. Bataan Drive, Dayton, OH 45420.

15. Defendant, Lisa Neal, is an Ohio real estate professional and managed the Subject Properties. Defendant, Lisa Neal, is a Dayton-area resident. At all times herein, Defendant Lisa Neal served as leasing agent and manager of the Subject Properties for Defendants.

16. Defendant, Khaldoon Mughrabi, is an Ohio real estate professional and business owner. At all times herein, Defendant Khaldoon Mughrabi owned, operated, and managed Defendants TSM Partners, Ltd., Heritage Homes Services, LLC, and Housing Redevelopment, Ltd.

17. In acting or omitting to act as alleged herein, each Defendant acted through its employees, officers, and/or agents and is liable on the basis of the acts and omissions of its employees, officers, and/or agents.

18. In acting or omitting to act as alleged herein, each employee, officer, or agent of each Defendant was acting in the course and scope of his or her actual or apparent authority pursuant to such agencies, or the alleged acts or omissions of each employee or officer as

agent was subsequently ratified and adopted by one or more Defendants as principal.

## JURISDICTION AND VENUE

**19.** Jurisdiction is appropriate in that this civil action is brought under the Federal Fair Housing Act ("FHA") and Federal Fair Housing Amendments Act ("FHAA"), 42 U.S.C. §§ 3601, *et seq.*

**20.** This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the complaint raises federal questions under the FHA and FHAA.

**21.** This Court has supplemental jurisdiction over related state law claims, Ohio Rev. Code § 4112.01, *et seq.* (the "Ohio Fair Housing Act"), and negligent training and supervision, under 28 U.S.C. § 1367.

**22.** Defendants are subject to the jurisdiction of this Court as they are a "Person" under the Fair Housing Laws, and the acts described herein primarily occurred in Montgomery County, Ohio.

**23.** Defendants conduct business across Ohio, including but not limited to: owning property, managing property, leasing property, and performing contractual obligations in Ohio.

**24.** Venue is proper in this Court in that the discriminatory acts occurred primarily in Montgomery County, Ohio.

**25.** Wherefore, Plaintiff respectfully requests that this honorable Court take jurisdiction of this Complaint and award such relief as is appropriate under the federal and state Fair Housing Laws.

## FACTS

**26.** Plaintiff restates and realleges each and every allegation in Paragraphs 1 through 25 as if

fully restated herein.

27. Plaintiff conducted testing of Defendants', TSM Partners, Ltd. and Housing Redevelopment Ltd., publicly advertised Subject Properties in November 2020 and March 2021.

28. The Subject Properties were managed and operated by Defendants, Heritage Home Services, LLC, Lisa Neal, and Khaldoon Mughrabi.

29. Testing evidence provided clear, unambiguous, and demonstrative evidence of discrimination against persons with disabilities regarding requesting and obtaining reasonable accommodations and reasonable modifications, and in subjecting disabled tenants to different terms, conditions, and privileges of renting a unit with Defendants.

30. Testing evidence further demonstrated that Defendants failed to properly train and supervise its employees, leasing agents, and property manager.

**TEST #1 – 2019 E. Bataan Drive, Dayton, OH 45420**

31. In November 2020, Plaintiff's reasonable accommodation tester ("RA Tester") contacted Defendants through the Zillow real estate website requesting a tour of the Subject Property located at 2019 E. Bataan Drive, Dayton, OH 45420. That property is owned by Defendant Housing Redevelopment Ltd., and managed and operated by Defendants Heritage Home Services, LLC, Lisa Neal, and Khaldoon Mughrabi.

32. The RA Tester subsequently received a message from Defendant, Lisa Neal, acting on behalf of the Defendants, stating that she was aware of the Zillow request. Defendant Neal stated that the Subject Property was a 3-bedroom, one bath cape cod. Defendant Neal confirmed that the rent was $1,095 with a one-year lease and no pets were permitted.

33. The RA Tester and Defendant, Lisa Neal, subsequently spoke over the phone. The RA

Tester notified Defendant Neal that his wife and son would reside at the Subject Property with him. The RA Tester then notified Defendant Neal that his son had autism and utilized the assistance of a companion animal. The RA Tester asked Defendant Neal if this would be okay despite the no pets policy of the Defendants.

34. Defendant Neal stated that it would be fine so long as the RA Tester had a current letter from his son's doctor explaining the need for the animal. Defendant Neal further reiterated that it had to be a "current letter" later in their conversation. Defendant Neal then forwarded an application to be completed by the RA Tester.

35. The RA Tester subsequently notified Defendant Neal that the doctor's letter was approximately 18 months old and asked if that would be sufficient. Defendant Neal asked how often they visited the doctor and instructed the RA Tester to call the doctor's office and have them email an updated letter. The conversation ended after this request.

36. The RA Tester then contacted Defendant Neal and stated that the doctor's office notified them that their letter did not have an expiration date and should still be good. Defendant Neal then text the RA Tester and stated that they "require an updated one with an updated date within one year."

37. Defendant Neal then sent a second text message stating that they require a current dated letter.

38. Defendant Neal subsequently provided several videos via text message of a virtual tour of the Subject Property.

39. Later, the RA Tester called Defendant Neal and asked how to make the application fee payment. Defendant Neal stated that the money order should be paid to Defendant, Khaloon Mughrabi.

40. During that final conversation, the RA Tester asked again if a new letter was needed since the doctor's letter for a companion animal had no expiration date. Defendant Neal confirmed that their policy was to require an updated letter.

41. Plaintiff's RA Tester had no further contact with Defendants because of the discriminatory preference and limitation communicated during the application process.

**TEST #2 – 917 Mineola Court, Trotwood, OH 45426**

42. In March 2021, Plaintiff's reasonable modification tester ("RM Tester") contacted Defendants through the Trulia real estate website requesting a tour of the Subject Property located at 917 Mineola Court, Trotwood, OH 45426. That property is owned by Defendant TSM Partners, Ltd., and managed and operated by Defendants Heritage Home Services, LLC, Lisa Neal, and Khaldoon Mughrabi.

43. After no response was received, the RM Tester submitted a second inquiry through Zillow's online portal for the same property.

44. The RM Tester subsequently received a response from the same phone number that communicated with Plaintiff's RA Tester. That phone number belonged to Defendant Neal. Defendant Neal, or another agent of Defendants, subsequently notified the RM Tester that 917 Mineola Court was a three bedroom one and a half bath and that it rented for $1,295 on a one-year lease with no pets permitted.

45. The RM Tester requested a virtual tour. Defendant Neal, or the Defendants' agent, later stated that they were not conducting virtual tours of the Subject Property.

46. The RM Tester notified Defendant Neal, or Defendants' agent, that they utilized a motorized wheelchair and was high risk for COVID-19. The RM Tester asked Defendants if they could send a couple of pictures of the front entrance to see if a ramp was needed.

The RM Tester also requested a photo of the shower.

47. Defendants' agent stated that they would obtain additional pictures the next time they were at the Subject Property.

48. The RM Tester asked when the agent would back at the Subject Property. The agent was not certain but requested a proposed move-in date. The RM Tester stated that they were looking to move by Mid-April 2021 at the latest. The agent communicated that that RM Tester would have to have an annual income of $52,000/year to qualify for the Subject Property.

49. Defendants' agent sent ten photos of the Subject Property two days later.

50. Plaintiff's RM Tester reviewed the photos and subsequently asked if she would be allowed to put a ramp at the front entrance and convert the existing shower to a roll-in shower at her own expense.

51. Defendants' agent replied that the bricks outside the front entrance could not be removed, and that the bathtub had just been renovated.

52. The RM Tester subsequently informed Defendants' agent that the bricks would not need to be removed. The RM Tester stated that the ramp could go to the side. The RM Tester and agent had additional conversation about service animal fees and the application process.

53. The RM Tester inquired if there were any fees associated with her service animal. Defendant Neal stated that there were no fees, but Defendants needed a current letter from a doctor.

54. Defendants' agent sent the applications with directions the following day. The agent identified herself as Defendant Lisa Neal. Defendant Neal confirmed that the phone

number was hers and that she worked for Coldwell Banker Heritage Realtors, an assumed name of Defendant Heritage Home Services, LLC.

55. The RM Tester then notified Defendant Neal that she did not have a doctor's letter regarding the service dog, but the RM Tester had his training certificate and asked if that would be acceptable.

56. Defendant Neal responded that the training certificate would not be sufficient, and that Defendants needed a doctor's letter within the last six months. Defendant Neal further stated that the letter from the nurse or doctor would have to show that they recommend a companion or service animal.

57. Plaintiff's tester had no further contact with Defendants after March 23, 2021 because of the overly restrictive policies and practices of the Defendants.

**TESTING EVIDENCE AND COMMISSION INVESTIGATION**

58. Testing evidence indicates that Defendants' policies and practices prevent prospective applicants with disabilities from applying for or renting a unit at the Subject Properties.

59. Testing evidence further indicates that Defendant intentionally discriminates against prospective applicants by imposing different terms and conditions on disabled applicants during the application and rental process.

60. Testing evidence further indicates that Defendant maintains policies and procedures which unfairly restrict housing choice for applicants with disabilities.

61. Plaintiff filed an administrative complaint with the Ohio Civil Rights Commission on November 17, 2021 alleging that Defendants violated the Fair Housing Laws on the basis of disability. Pursuant to 42 U.S.C. §3613(a)(1)(B), the statute of limitations was stayed for the time during which Plaintiff's administrative complaint was pending before the Ohio

Civil Rights Commission.

62. The Commission conducted an extensive investigation into Defendants' housing policies, practices, and services related to the conduct described in this Complaint. Defendants were provided the opportunity to provide a defense of their actions, policies, and practices.

63. On September 1, 2022, the Commission issued a letter of determination finding it probable that Defendants discriminated on the basis of disability. The Commission's determination is attached as Exhibit 1 to this Complaint.

64. The Commission determined that Defendants requested medical documentation before the application process and not after in violation of the Fair Housing Laws.

65. The Commission further determined that Defendants applied two different policies regarding the time frame for the medical documentation regarding the animal assistant.

66. The Commission further found that Defendants did not engage in the interactive process to accommodate the RM Tester's requests regarding the modification for a ramp or bathtub. Defendants never provided a follow up discussion about the ramp other than Defendant Neal stating, "Sorry," as a reason for not allowing the ramp.

67. The Commission further found that Plaintiff suffered economic loss through its diversion of resources and frustration of mission to promote equal housing opportunities.

**INJURY TO PLAINTIFF**

68. As referenced herein, Plaintiff, through its testers, requested reasonable accommodations to Defendants' no pets policy prior to applying, paying fees, and moving into a unit which was reasonable and necessary.

69. Plaintiff also requested a reasonable accommodation to Defendants' policy of requiring a current doctor's letter.

**70.** Defendants denied the requests for reasonable accommodations.

**71.** As referenced herein, Plaintiff, through its testers, requested a reasonable modification for a ramp and shower. Defendants denied the request and failed to engage in any interactive process with Plaintiff.

**72.** Plaintiff's request for a reasonable modification was clearly and unambiguously denied when Defendant Neal stated "Sorry."

**73.** Plaintiff's testers were subjected to different terms and conditions in renting a dwelling by being told that a doctor's letter had to either be within 6 months (the Trotwood property) or 12 months (the Kettering property) for an assistance animal. Such unreasonable terms and conditions were arbitrary and imposed on Plaintiff to discourage the rental of the Subject Properties.

**74.** Defendants' actions as described herein made housing otherwise unavailable for prospective applicants based on disability.

**75.** Defendants' actions as described herein limit housing choice for persons with disabilities in violation of the Fair Housing Laws.

**76.** As a direct, proximate, and foreseeable result of Defendants' actions as described herein, Plaintiff, MVFHC, has suffered, continues to suffer, and will in the future suffer substantial, particularized, and concrete injuries.

**77.** Defendants' unlawful conduct, policies, and practices have frustrated and impaired MVFHC's mission and purpose, forced them to drain their limited and scarce resources, and interfered with their ability to operate.

**78.** Defendants' conduct frustrated Plaintiff's mission by interfering with their mission-related activities, impairing their ability to achieve their goals of ensuring equal and fair access to

housing opportunities, and harming their community.

79. Defendants' discriminatory conduct has forced and required Plaintiff to engage in numerous activities to identify and counteract the Defendants' unlawful conduct, policies, and practices, in order to protect residents from unlawful housing discrimination.

80. Plaintiff conducted extensive investigations of disability-related issues at Defendants' properties for over a year.

81. The investigations included pre-testing research, site visits, testing on several occasions, education and outreach, post-testing research, and extensive discussions with testers and staff to resolve and ameliorate the discriminatory housing policies, practices, and services of Defendants.

82. Plaintiff's diversion of time and resources to address Defendant's discriminatory conduct has forced MVFHC to suspend other projects that would have furthered its mission, including: conducting training sessions, investigation of other housing providers, missed speaking engagements, delaying its Analysis of Impediments to Fair Housing Study in Montgomery County, Ohio, and other testing-related activity.

83. Plaintiff will continue to divert its scarce resources and have its mission frustrated until Defendants' discriminatory conduct ceases and the harms caused by Defendants on residents and prospective residents are remedied and resolved.

## CAUSES OF ACTION

## COUNT I: VIOLATION OF THE FAIR HOUSING ACT OF 1968, as amended

## 42 U.S.C. § 3601, *et seq.* (Disability Discrimination)

84. Plaintiff restates and realleges each and every allegation in Paragraphs 1 through 83 as if

Case: 3:23-cv-00240-MJN-PBS Doc #: 1 Filed: 08/24/23 Page: 14 of 26 PAGEID #: 14


fully restated herein.

85. Plaintiffs' requests for reasonable accommodations and modifications were reasonable and necessary.

86. Defendants' conduct as described in this Complaint constitutes a refusal to make reasonable accommodations in rules, policies, practices, or services when such an accommodation may be necessary to afford a person with a disability an opportunity to use and enjoy a dwelling in violation of 42 U.S.C §§ 3604(f)(1); 3604(f)(2); and 3604(f)(3)(B).

87. Defendants' conduct as described in this Complaint constitutes discrimination in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of the disability of a person residing in or intending to reside in a dwelling, including through the refusal to make reasonable accommodations, in violation of 42 U.S.C. §§ 3604(f)(1); 3604(f)(2); and 3604(f)(3)(B).

88. Defendants' conduct as described in this Complaint constitutes a refusal to permit, at the expense of the disabled person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted, in violation of 42 U.S.C. §§ 3604(f)(1); 3604(f)(2); and 3604(f)(3)(A).

89. Defendants' conduct as described in this Complaint constitutes discriminatory statements that indicate a preference, limitation, or discrimination based on disability in violation of 42 U.S.C. § 3604(c).

90. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has suffered damages and are aggrieved persons, as defined in 42 U.S.C. § 3602(i).

91. Wherefore, Plaintiff requests compensatory and punitive damages in excess of $25,000, together with costs and reasonable attorney fees, in an amount to be determined at trial.

## COUNT II: VIOLATION OF THE OHIO CIVIL RIGHTS ACT

## OHIO REV. CODE § 4112.02(H), *et seq.* (Disability Discrimination)

92. Plaintiff restates and realleges each and every allegation in Paragraphs 1 through 91 as if fully restated herein.

93. Plaintiff's requests for reasonable accommodations and modifications were both reasonable and necessary.

94. Defendants' conduct as described in this Complaint constitutes a refusal to make reasonable accommodations in rules, policies, practices, or services when necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling, in violation of Ohio Rev. Code §§ 4112.02(H)(15) and 4112.02(H)(19).

95. Defendants' conduct as described in this Complaint constitutes an unlawful refusal to rent, denial or withholding of a housing accommodation because of disability in violation of Ohio Rev. Code § 4112.02(H)(4).

96. Defendants' conduct as described in this Complaint constitutes discrimination in the terms, conditions, or privileges of the rental of dwellings, or in the provision of services or facilities in connection therewith because of disability in violation of Ohio Rev. Code § 4112.02(H)(16).

97. Defendants' conduct in this Complaint constitutes discriminatory statements that indicate any preference, limitation, specification, or discrimination based on disability with respect

to a housing accommodation in violation of Ohio Revised Code § 4112.02(H)(7).

98. As a result of Defendants' discriminatory conduct, Plaintiffs have suffered damages and are aggrieved persons, as defined in Ohio Rev. Code § 4112.051.

99. Wherefore, Plaintiff requests compensatory and punitive damages in excess of $25,000, together with costs and reasonable attorney fees, in an amount to be determined at trial.

### COUNT III: NEGLIGENT TRAINING AND SUPERVISION

100. Plaintiff restates and realleges each and every allegation in Paragraphs 1 through 99 as if fully restated herein.

101. Defendants owed a duty of care to properly train and supervise its employees, including its property managers and leasing agents, on fair housing laws and non-discriminatory practices.

102. Defendants breached their duty of care by negligently providing inadequate training and failing to supervise its property managers and leasing agents, including Defendant Lisa Neal.

103. As a direct and proximate result of Defendants' negligent training and supervision, Plaintiff suffered harm in the form of unfair and discriminatory treatment during the initial inquiry and application process.

104. As a direct and proximate result of Defendants' negligent training and supervision, Defendant Neal failed to engage in the interactive process as required by the Fair Housing Laws, which constitutes a refusal to make a reasonable accommodation or modification.

105. As a further direct and proximate result of Defendants' negligent training and supervision, Defendant Neal imposed different terms and conditions on the RA Tester and RM Tester, respectively, as it pertained to the requirement of a "current" doctor's letter, thereby

16

subjecting them to differential treatment in the application process because of their disabilities.

106. Plaintiff was injured by Defendants' actions as described herein and diverted its scarce resources and had its mission frustrated by Defendants' discriminatory conduct as described herein.

107. Wherefore, Plaintiff requests compensatory and punitive damages in excess of $25,000, together with costs and reasonable attorney fees, in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, due to Defendants' discriminatory conduct and policies as described herein, Plaintiff respectfully requests that this Court grant judgment in its favor, and against Defendants, as follows:

    **A.** Declaring that Defendants' actions violate the Federal Fair Housing Act, 42 U.S.C. § 3601, *et seq*., and Ohio Rev. Code § 4112.02, *et seq.*;

    **B.** Declaring that Defendants failed to property train and supervise its employees and/or agents;

    **C.** Permanently enjoining Defendants from engaging in the conduct described herein and directing Defendants to take all affirmative steps necessary to remedy the effects of the conduct described herein and to prevent additional instances of such conduct or similar conduct from occurring in the future;

    **D.** Awarding compensatory and punitive damages in an amount in excess of $25,000 together with costs and reasonable attorney fees pursuant to 42 U.S.C. § 3613(c).

    **E.** Mandate that the Defendants and all of their agents and employees receive training

fair housing laws; and

**F.** Grant such additional legal and equitable relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury on all issues triable as of right.

**Dated:** August 24, 2023

Respectfully submitted,

*/s/ C. Jacob Davis*

_____

C. Jacob Davis (#0101745)
Nalls Davis
33 White Allen Avenue
Dayton, Ohio 45405
Phone: (937) 813-3003
Fax: (937) 200-7285
Jacob.Davis@nallslaw.com
Attorney for Plaintiff, The Miami Valley
Fair Housing Center, Inc.

*/s/ Stephen M. Dane*

_____

Stephen Dane (# 0013057)
Dane Law LLC
PO Box 1011
Perrysburg, Ohio 43552
Tel: 419-944-8611
SDane@fairhousinglaw.com
Attorney for Plaintiff, The Miami Valley
Fair Housing Center, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that service of the Summons and Complaint, or waiver of service, are being submitted to Defendants in accordance with the Federal Rules of Civil Procedure.


Respectfully,

*/s/ C. Jacob Davis*

_____

C. Jacob Davis (#0101745)

**EXHIBIT #1 – OHIO CIVIL RIGHTS COMMISSION FINDINGS**



# OHIO CIVIL RIGHTS COMMISSION

Governor Mike DeWine

Commissioners: Lori Barreras, Chair | J. Rita McNeil Danish | William Patmon, III | Madhu Singh | Charlie Winburn
Executive Director Angela Phelps-White

**September 1, 2022**

**Mailed Date: September 2, 2022**

Miranda Wilson
Director of Investigations & Enforcement
Miami Valley Fair Housing, Inc.
505 Riverside Dr.
Dayton, OH 45405
miranda.wilson@mvfairhousing.com

Lisa M. Neal, Property Manager
Coldwell Banker Heritage
535 N. Main St.
Springboro, OH 45066

RECEIVED
SEP - 6 2022
MIAMI VALLEY
FAIR HOUSING CENTER

## LETTER OF DETERMINATION

Miami Valley Fair Housing Center, Inc. v. Lisa M. Neal, Property Manager; Coldwell Banker
Heritage; Kal Mughrabi, Real Estate Agent; Housing Redevelopment, LTD.; TSM Partners, LTD.
TOLH6(29987)11232021/05-22-5666-8

**FINDINGS OF FACT:**

On November 23, 2021, Charging Party, Miami Valley Fair Housing Center, Inc. filed an affidavit with
the Ohio Civil Rights Commission ("Commission") alleging Respondent(s), Lisa M. Neal, Property
Manager; Coldwell Banker Heritage; Kal Mughrabi, Real Estate Agent; Housing Redevelopment, LTD.;
TSM Partners, LTD. (herein after referred to as the "Respondent") applied different terms and conditions,
denied a reasonable accommodations and denied a reasonable modification based on disability. All
jurisdictional requirements for filing a charge have been met.

The subject property located at 2019 East Bataan Drive, Kettering, Ohio is a single-family home built in
1946. The subject property located at 917 Mineola Court, Trotwood, Ohio is a single-family home built
in 1958.

Housing Redevelopment, LTD. and TSM Partners, LTD. are owners of the subject properties. Lisa M.
Neal, Property Manager, and Kal Mughrabi, Real Estate Agent, are Property Managers for the subject
properties.

Charging Party, Miami Valley Fair Housing Center is a nonprofit civil rights agency that promotes housing
choice, the creation of inclusive communities of opportunity, and the protection and expansion of fair
housing rights to support strong communities free from housing discrimination.

Charging Party, Miami Valley Fair Housing Center, Inc. conducted testing of publicly advertised units in
November of 2020 and March of 2021 managed by Respondent, Lisa M. Neal. Testing evidence indicates
a pattern and policy of differing treatment for people with disabilities, including requiring additional
conditions to grant reasonable accommodations and denial of reasonable modifications.

Miami Valley Fair Housing Center, Inc. v. Lisa M. Neal, Property Manager; Coldwell Banker
Heritage; Kal Mughrabi, Real Estate Agent; Housing Redevelopment, LTD.; TSM Partners, LTD.
TOLH6(29987)11232021/05-22-5666-8
Page 2

Respondents deny any discriminatory conduct in this matter. Respondents state they have a strong track
record of accommodating requests for emotional support animals and service animals, and it is their
practice to allow reasonable physical modifications to their properties to accommodate tenant requests.
Consistent with this, Respondents undertook extraordinary efforts to assist the individuals at issue in
Charging Party's complaint to attempt to rent their properties despite knowing of their claimed needs and
were willing to work with them to make any necessary accommodations.

Respondent, Lisa M. Neal, who manages the properties, went out of her way to provide additional
photographs, make videos for a virtual showing, and otherwise work with the prospective tenants.

Respondents state they did not deny a single reasonable accommodation and merely requested reasonable
documentary support for the claimed support animal needs. This matter arises out of Charging Party's
initiated tester evaluations conducted relative to two different properties. For both properties, Charging
Party's testers indicated an intent to live with either an emotional support animal or a service animal.
Respondent, Neal properly requested written confirmation to substantiate the claimed need. Similarly,
each of the MVFHC testers indicated a need for physical modifications of the properties, and Respondent,
Neal properly did not refuse to make any reasonable accommodations.

Staff reviewed relevant documentation. Documents show on November 24, 2020, RA Tester contacted
Respondent, Neal expressing interest in renting a residential property at 2019 East Bataan Drive, in
Dayton, Ohio.

Documents show on November 30, 2021, Respondent Neal confirmed receipt of the message, provided
information concerning the property, the rent, and the no-pet policy, and asked RA Tester to contact her
to schedule an appointment. Within the hour, Respondent Neal and RA Tester spoke via telephone
concerning the property and answered all RA Tester's questions. Respondent Neal notified RA Tester that
applications are not provided until an interested individual has viewed the property. RA Tester indicated
a current quarantine due to COVID. Respondent Neal inquired about potential occupants. RA Tester
notified Respondent Neal that his son would be living in the property and that the son had a companion
animal due to his disability. Respondent Neal stated that it would not be a problem and asked for a current
letter confirming the need for a companion animal. RA Tester stated that he had a current letter. RA Tester
indicated that his son also had a sensory swing he would like to have professionally installed and, upon
vacating the property, the tester would have the property restored to its original condition. Respondent
Neal indicated that it would not be a problem. Respondent Neal provided the application via email even
without a physical visit of the property and volunteered to arrange a video tour of the property for the
convenience of the prospective tenant.

Documents show on December 1, 2020, RA Tester texted Respondent Neal to tell her that the letter he
had was not recent, it was over a year and a half old. Respondent Neal requested an updated letter. RA
Tester mentioned that he had spoken with the doctor and that because the letter "doesn't have an expiration
date" assumed it was sufficient. Respondent Neal confirmed an updated letter would be needed. The letter
was never provided to Respondents. Respondent Neal never heard from RA Tester again.

Miami Valley Fair Housing Center, Inc. v. Lisa M. Neal, Property Manager; Coldwell Banker
Heritage; Kal Mughrabi, Real Estate Agent; Housing Redevelopment, LTD.; TSM Partners, LTD.
TOLH6(29987)11232021/05-22-5666-8
Page 3

Documents show on March 16, 2021, RM Tester used Trulia to attempt to contact Respondent Neal
expressing interest in renting a residential property at 917 Mineola Court, in Trotwood, Ohio. Two days
later, RM Tester submitted an inquiry through Zillow. Respondent Neal responded to RM Tester with a
text message providing information about the property, advising of the no-pet policy, and providing
instructions on how to request an appointment.

Documents show RM Tester notified Respondent Neal that she used a motorized wheelchair and, due to
COVID, she wished for Ms. Neal to send her photographs of the front entrance, to see if a ramp may be
needed as well as photographs of the shower. On March 21, 2021, the next time Respondent Neal visited
Mineola Court, she took photos and sent them to RM Tester.

Information shows on March 21, 2021, RM Tester asked whether she would be allowed to install a ramp
at the front entrance and convert the existing shower to a roll-in shower at her own expense. Respondent
Neal noted that the bricks at the front entrance could not be removed, and that the bathroom had just been
remodeled, "Sorry". RM Tester stated that removing the bricks would not be necessary. There was no
further discussion regarding the ramp or the shower. Respondent offered no alternative accommodation
in this regard, thereby not participating in an interactive process concerning the ramp.

Information shows on March 23, 2021, RM Tester informed Respondent Neal that she required the
assistance of a service dog and asked if there would be associated fees. Respondent Neal confirmed there
would be no fees associated with a service dog and requested a current letter confirming the need for the
service animal. Respondent Neal did request a letter supporting the need of a service animal within the
past six months, but RM Tester did not have any letter. RM Tester stated she had a certificate showing
that the dog had been trained. Respondent Neal stated that she would need a current document supporting
a need for an emotional support or service animal. There was no further discussion regarding the document
supporting a need for an emotional support, service or therapy animal. The same day, Respondent Neal
informed RM Tester that the prior applicant had been denied and that Mineola Drive was still available.
Respondent Neal had no further interaction with RM Tester.

The Ohio Administrative Code §4112-5-02(C) defines an animal assistant as "any animal which aids the
disabled." The Ohio Administrative Code §4112-5-07(C) further states, in relevant part:

> "Every disabled person who has an animal assistant or who obtains an animal assistant shall
> be entitled to keep the animal assistant on the premises purchased, leased, rented, assigned or
> subleased by such disabled person."

The Ohio Civil Rights Commission's Technical Policy Section T-31.3.1 "Emotional Support Animals
(ESA) in Housing" further provides:

> "In the case of an ESA, the animal need not perform specific tasks, but must have a direct
> correlation in providing emotional support that alleviates one or more symptoms or effects of a
> person's disability." Additionally, the Commission's Technical Policy specifies that "housing
> providers cannot require a special certification, identification card, or training documentation
> for the ESA or ask that the animal demonstrate its ability to perform work or a task."

Miami Valley Fair Housing Center, Inc. v. Lisa M. Neal, Property Manager; Coldwell Banker Heritage; Kal Mughrabi, Real Estate Agent; Housing Redevelopment, LTD.; TSM Partners, LTD. TOLH6(29987)11232021/05-22-5666-8
Page 4

The Ohio Civil Rights Commission's Technical Policy section T-31.3 "The Application of Animal Assistants in Housing" states, in relevant part:

> "An animal assistant in housing does not need to be trained. Therefore, an animal that provides emotional support or comfort may qualify as an animal assistant under R.C. §4112.02(H)."

> "The Commission takes the position that a health services provider does not have to hold an Ohio license to verify the need for the animal. First, a provider, who holds a valid Ohio telemedicine certificate, may so attest. Additionally, if the patient has seen a health care professional licensed in another state, the provider may verify the disability or need for an ESA as long as the last contact with the patient occurred within the past twelve months from the date of the accommodation request."

Once the tenant indicates a need for an ESA the housing provider may accept this information. This information is sufficient to place the housing provider on notice of an alleged disability and need for an accommodation.

> "The request for medical documentation by the housing provider can only be made after and not during the application process."

Information shows that Respondent requested the medical documentation before the application process not after the application process.

Information shows that Respondent applied two different policies regarding the time frame for the medical documentation regarding an Animal Assistant.

Information shows Respondents did not engage in the interactive process to accommodate RM Tester's requests regarding the modification for a ramp and bathtub. Respondents discontinued the interactive process, at the point RM Tester queried Respondent about the ramp. Respondents never answered or provided follow up discussion about the ramp other than "Sorry."

T-31 further indicates "once a housing provider has established that a person meets the ACTS definition of disability, the providers request for documentation should seek only the information that is necessary to evaluate if the reasonable accommodation is needed because of disability."

Information shows that as a result of Respondent's discriminatory conduct, Charging Party has been inconvenienced in terms of economic loss through diversion of its resources, and frustration of its mission to promote equal housing opportunities. Charging Party was forced to divert some of its resources away from other fair housing activities to address Respondent's discriminatory conduct.

**DECISION:**
The Ohio Civil Rights Commission determines it is **PROBABLE** that Respondent has engaged in an unlawful discriminatory practice in violation of Ohio Revised Code Chapter 4112. Therefore, the Commission hereby orders that this matter be scheduled for **CONCILIATION**.

Miami Valley Fair Housing Center, Inc. v. Lisa M. Neal, Property Manager; Coldwell Banker Heritage; Kal Mughrabi, Real Estate Agent; Housing Redevelopment, LTD.; TSM Partners, LTD. TOLH6(29987)11232021/05-22-5666-8
Page 5

In accordance with Ohio Revised Code § 4112.05(A) and Ohio Administrative Code § 4112-3-03(C), the Commission invites you to participate in conciliation by informal methods of conference, conciliation, and persuasion. Enclosed is a draft Conciliation Agreement and Consent Order for your consideration.

Brad Adams has been assigned as Conciliator and can be reached by telephone at 419-245-2911 or by email at Brad.Adams@civ.ohio.gov@civ.ohio.gov. **Please contact the Conciliator to discuss the conciliation process**.

If the Commission's attempts at conciliation are unsuccessful, a formal complaint will be issued, and the case will be scheduled for a public hearing.

**NOTICE OF RIGHT TO REQUEST RECONSIDERATION:**
Pursuant to Ohio Administrative Code § 4112-3-04, you have the right to request reconsideration of this determination of the Commission. The application must be in writing and state specifically the grounds upon which it is based. If you wish to appear before the Commissioners to present oral arguments supporting your request, you must specifically make a request to appear in writing.

This request must be sent to the Compliance Department, Ohio Civil Rights Commission, 30 East Broad Street, 5th Floor, Columbus, Ohio 43215. You must submit the request for reconsideration, along with all additional evidence or supporting documentation, within **TEN (10) days** of the date of mailing of this notice.

Any application for reconsideration or additional materials received by the Compliance Department in the Commission's Columbus Central Office after the ten-day period has expired will be deemed untimely filed. Extensions of this ten-day filing period are not permitted.

*\*\*Please note, conciliation efforts do not toll the applicable time period for submitting a Request for Reconsideration. See, Ohio Administrative Code § 4112-3-04.*
FOR THE COMMISSION,

*Inder F. Levesque*
Inder F. LeVesque.
Toledo Regional Director
IFL/sms
Enclosure: Draft Conciliation Agreement and Consent Order

Miami Valley Fair Housing Center, Inc. v. Lisa M. Neal, Property Manager; Coldwell Banker Heritage; Kal Mughrabi, Real Estate Agent; Housing Redevelopment, LTD.; TSM Partners, LTD.
TOLH6(29987)11232021
Page 6

cc: **Additional Respondents**
Kal Mughrabi, Real Estate Agent
Coldwell Banker Heritage
535 N. Main St.
Springboro, OH 45066

TSM Partners LTD
c/o Gerald L. Philhower
228 Byers Road Suite 100
Miamisburg, OH 45342
**Charging Party's Representative**
None on Record

**Additional Respondents**
Housing Redevelopment LTD
c/o Gerald L. Philhower
228 Byers Road, Suite 100
Miamisburg, OH 45342
**Respondent's Representative**
Timothy R. Rudd, Esq.
Scott L. Braum & Associates, LTD.
Attorneys at Law
812 East Franklin Street, Suite C
Dayton, OH 45459
trr@braumlaw.com